1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 24-cr-20051-JEM

UNITED STATES OF AMERICA,        Miami, Florida

                 Plaintiff,      May 15, 2024

    vs.                          10:43 a.m. - 2:17 p.m.

ALFRED LENORIS DAVIS,            Volume 2

                 Defendant.      Pages 1 to 66

                    TRANSCRIPT OF JURY TRIAL
          BEFORE THE HONORABLE JOSE E. MARTINEZ
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:     JONATHAN BAILYN, ESQ.
                        UNITED STATES ATTORNEY'S OFFICE
                        99 NE 4th Street
                        Miami, Florida 33132

                        KATIE L. SADLO, ESQ.
                        UNITED STATES ATTORNEY'S OFFICE
                        500 South Australian Avenue
                        Suite 400
                        West Palm Beach, Florida  33401

FOR THE DEFENDANT:      ZELJKA BOZANIC, ESQ.
                        BOZANIC LAW, P.A.
                        17100 Royal Palm Blvd.
                        Suite 1
                        Weston, Florida 33326

                        HUMBERTO DOMINGUEZ, ESQ.
                        LAW OFFICE OF HUMBERTO R. DOMINGUEZ
                        150 West Flagler Street
                        Suite 2900
                        Miami, Florida 33130

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

2

1          *STENOGRAPHICALLY REPORTED BY:*
           MARY ANN CASALE, RDR, FPR-C, CLR, CSR-IL
2                Official Court Reporter
                United States District Court
3               Southern District of Florida
                400 North Miami Avenue
4                Miami, Florida 33128
           MaryAnn_Casale@flsd.uscourts.gov
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1              (Call to the Order of the Court.)

2              THE COURT:  You may be seated.

3              Someone wanted to speak to me.

4              MR. DOMINGUEZ:  Judge, I do have a brief

5    motion.  I'll be as quick as possible.

6              THE COURT:  Okay.

7              MR. DOMINGUEZ:  Just regarding the exhibits

8    yesterday of the two convictions, you know, that they

9    were not properly -- I objected to both of them coming in

10   at the same time.

11             THE COURT:  Right.

12             MR. DOMINGUEZ:  And they were not properly

13   identified and linked to this defendant.  They basically

14   were just admitted whole cloth without saying there's

15   fingerprints, that they could have been analyzed or

16   attached or other ways of making sure that it's the same

17   person.  They shouldn't be in evidence.

18             I'm moving that they be stricken from the

19   record and the jury instructed to disregard them and/or

20   to declare a mistrial, Judge.  And that's my motion.

21             Thank you.

22             MR. BAILYN:  Your Honor, the defense had an

23   opportunity to cross-examine the agent about the

24   authenticity of these documents and the ability to --

25             THE COURT:  Why should they have to?

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

4

1          MR. BAILYN:  They don't have to.

2          THE COURT:  I mean, it's your responsibility to

3    authenticate the document.

4          MR. BAILYN:  We did.

5          THE COURT:  How do we have the authentication

6    that that is this person?

7          MR. BAILYN:  We do, Your Honor.  We had Special

8    Agent Weisenstine explain how he gathered the documents,

9    the background check that he ran through FBI, how he

10   collected the documents, how he went to the County court

11   and collected the certified records.  The questions that

12   the defense has --

13         THE COURT:  There's no question that he got

14   records of an Alfred Lenoris or whatever it is --

15         MR. BAILYN:  Sure.

16         THE COURT:  -- but I don't know that there's

17   been any evidence that this young man sitting in here is

18   the same person.

19         MR. BAILYN:  For example, on the State

20   conviction, it's the same date of birth as the defendant

21   and it's his full name, your Honor.  These questions that

22   they have would go to weight, but not the admissibility.

23   We certainly made a prima facie showing that these

24   documents are authentic and admissible.

25         THE COURT:  I'm not sure.

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1            MR. DOMINGUEZ:  It's not, and you know that.

2            THE COURT:  It's certainly unusual and lazy.

3            MR. BAILYN:  Your Honor, this is not a case in

4   which this is an element of the crime in which case the

5   Government would then need to prove beyond a reasonable

6   doubt.  This is evidence that is coming in as 404(b).

7   The Court needs to merely find that we have made a prima

8   facie showing of authenticity and by a preponderance of

9   the evidence.

10           THE COURT:  You mean that there is a different

11  standard of evidence for 404(b) than there is for direct

12  evidence?  I don't think so.

13           MR. BAILYN:  No, there isn't, your Honor, but

14  there is a difference in terms of what the Government

15  does in certain cases.  The Government is always -- is

16  not always under an obligation to do an entire

17  fingerprint analysis of each defendant, we do that,

18  though, in order to prove beyond a reasonable doubt a

19  particular element of the crime.

20           This case was introduced, these convictions, as

21  404(b) evidence.  We don't need to prove them beyond a

22  reasonable doubt.  They simply need to be put before the

23  jury.

24           THE COURT:  You need to prove your case beyond

25  a reasonable doubt, and one of the things that you

6

1    propose to prove your case is that this individual was

2    previously convicted twice of a felony, one of which was

3    remarkably similar to this case, but you haven't shown

4    that this is the same guy.

5        MR. BAILYN:  But we have, your Honor.  The

6    standard for the admissibility of 404(b) --

7        THE COURT:  How have you shown it?

8        MR. BAILYN:  The standard is by a preponderance

9    of the evidence for 404(b) evidence.  We have had the

10   special agent testify that he ran an NCIC of this

11   defendant using his Social Security number, date of

12   birth, and personal identifying information; that

13   information that was returned in the NCIC allowed the

14   special agent to go and collect records, records that

15   existed exactly as the NCIC said they would -- records

16   that have both the defendant's date of birth and --

17       THE COURT:  Because nobody misuses Social

18   Security numbers, nobody uses somebody else's Social

19   Security number ever.

20       MR. DOMINGUEZ:  But those convictions --

21       THE COURT:  I mean, that's just nonsense.

22       MR. DOMINGUEZ:  Those convictions do not have

23   Social Security numbers or any reference to any Social

24   Security number whatsoever.  One of them doesn't even

25   have a date of birth.

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1          MR. BAILYN:  Allow me to finish.

2          MS. SADLO:  No, that is not true.  The state

3    conviction certainly has the date of birth.

4          First of all, your Honor, the Social Security

5    number is used --

6          THE COURT:  One at a time.

7          MR. DOMINGUEZ:  And fingerprints.

8          MR. BAILYN:  The Social Security number is used

9    for the special agent to do a background check and then

10   determine where to find these corresponding records,

11   records that entirely corresponded with federal databases

12   the special agent used.

13         We are not attempting to prove these

14   convictions beyond a reasonable doubt.  It's not an

15   element of the crime.  This isn't a 922G.  This is,

16   however, a case of 404(b), where we merely need to prove

17   by a preponderance of the evidence that this was the

18   defendant.

19         The jury has more than enough to both have

20   these exhibits in front of them and for us to have shown

21   by a preponderance of the evidence based on Special Agent

22   Weisenstine's testimony, his research, and his collection

23   of these records that it is, in fact, the defendant who

24   was convicted.

25         THE COURT:  I'll overrule your objection, but

1    I'm not convinced.

2            MR. DOMINGUEZ:  Look at the documents, Judge.

3    Like I said, even the State conviction does not have a

4    date of birth on it.

5            MR. BAILYN:  It does.  On the first page --

6            THE COURT:  You can argue that --

7            (Simultaneous crosstalk.)

8            THE COURT:  You can argue that --

9            MR. BAILYN:  At the top, and the date of birth

10   is to the left.

11           THE COURT:  You can argue that to the jury.

12           All right.  Can we bring the jury in?

13           I overrule your objection.

14           MR. DOMINGUEZ:  Thank you, Judge.  Thank you

15   for the opportunity to address the Court.

16           THE COURT:  No problem.  I love hearing from

17   lawyers early in the morning.  It's good for me.  Builds

18   character.

19           Please bring the jury in.

20           (Jury enters at 10:49 a.m.)

21           THE COURT:  All right.  Please be seated.

22           Are we ready to proceed.

23           MS. SADLO:  Yes, your Honor.  The United States

24   is ready to proceed.

25           THE COURT:  Defense?

1          MS. BOZANIC:  Yes.

2          MR. DOMINGUEZ:  Judge, for the record,

3   Ms. Bozanic will be doing the closing, but I will be

4   doing the objections.

5          THE COURT:  Say again, please.

6          MR. DOMINGUEZ:  For the record, Ms. Bozanic

7   will be doing the closing, but I will be doing the

8   objections.

9          THE COURT:  Okay.  Not real crazy about

10  objections during closings unless you have something

11  that's really important because sometimes it's done for

12  purposes of just interrupting and knocking them off their

13  stride, but I trust you won't, as an experienced

14  attorney, do that.

15          MR. DOMINGUEZ:  I won't do that, Judge.

16          THE COURT:  Ladies and gentlemen, as I told you

17  before, the statements that the lawyers made to you at

18  the beginning of the case, as well as the arguments they

19  present to you now, are not to be considered by you as

20  either evidence in the case, which comes only from the

21  witnesses and exhibits, or as your instruction on the

22  law, which comes only from the witnesses -- I'm sorry,

23  which comes only from here.

24          These statements or arguments are,

25  nevertheless, very important to help you understand the

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1    evidence as it comes in and the issues or disputes you

2    will be called on to decide, as well as the positions

3    taken by both sides.  So I ask that you now give the

4    lawyers your close attention, as I recognize them in turn

5    for the purpose of making an opening statement.

6              Now because the Government has the burden of

7    proof, which never shifts, they will have the opening and

8    closing argument, rebuttal argument.  The defense will

9    have one argument.  I'm going to put 15 minutes on the

10   board, and whatever you don't use, you'll have for

11   rebuttal.  If you use it all, you'll have it all gone.

12             Bye.  Go ahead.  Go.

13             MS. SADLO:  Your Honor, may I ask a brief

14   question before you start the timer?

15             THE COURT:  Say again, please?

16             MS. SADLO:  May I ask one clarifying question?

17   We have 30 minutes each side total for closings.

18             THE COURT:  I'm sorry.  Was that what it was,

19   30?

20             MS. SADLO:  Yeah.

21             THE COURT:  I was hoping you would forget, and

22   I would get away with 25.

23             MS. SADLO:  We'll do our best.  Okay.  30 is

24   fine.  I do remember that now.

25             THE COURT:  How much do you want to reserve for

**STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT**

1    later?  Like I said, if you go over, you go over.

2             MS. SADLO:  Yes, your Honor.  We'd like to

3    reserve ten minutes for rebuttal.

4             THE COURT:  All right.  So I'll put 20 minutes

5    on for you now, but if you go over you're still able to

6    keep going, you may go for your full 30.

7             All right.  You may proceed.

8             MS. SADLO:  Thank you, your Honor.  May we

9    please have all the screens turned --

10            THE COURT:  The computer?

11            MS. SADLO:  The computer at counsel table.

12            THE COURT:  Yes, you may, theoretically.  It's

13   very possible that you may.

14            MS. SADLO:  Good morning, Ladies and Gentlemen.

15            So yesterday we heard all the evidence in this

16   case.  Today we get to talk about how that evidence meets

17   all the legal requirements of the crime that the

18   defendant, Alfred Davis, was charged with.

19            You heard in opening statements yesterday the

20   defendant has been charged with one count of access

21   device fraud.  We're going to go through each of the

22   legal requirements for that crime.  But in its simplest

23   terms, we are here today because the defendant lied about

24   the most basic piece of information he could, his

25   identity.  And he lied about his identity when he used

1    that fake driver's license with a fake name to pass a

2    background check and trick 400 Sunny Isles into allowing

3    him to live there and gain access to all of the amenities

4    that that beautiful luxury condominium had to offer.

5          Let's talk about the elements of that crime.

6    There are three elements.  First, the defendant knowingly

7    used a counterfeit access device.  Second, the defendant

8    knew the access device was counterfeit and acted with an

9    intent to defraud or deceive.  And third, the defendant's

10   conduct affected interstate commerce.

11         So let's start with the first element.  We're

12   going to talk about what each of the words in that

13   element mean.  First, what is an access device?  You're

14   going to get a packet of jury instructions later when you

15   go back to deliberate.  You'll see there is a long

16   definition of access device.  But all that matters here

17   today is a personal identification number.  A driver's

18   license is a personal identification number.

19         What does it mean to have a counterfeit access

20   device?  Well, to have an access device that's

21   fictitious, altered, or forged.  Here, a fake driver's

22   license.

23         How do we know that the license that was used

24   to pass a background check is fake?  Well, we heard from

25   Special Agent Weisenstine that he requested the DMV

1   records, the official records from the Florida Highway

2   Safety and Motor Vehicles, for that driver's license

3   number.  We heard that that driver's license number and

4   the official records doesn't return any information for a

5   Rod Lesperance, and it certainly doesn't return any

6   information for an Alfred Davis.  Instead, that driver's

7   license number returned a record for an Aaron James

8   Lukoff.  We can also see, when comparing those two, that

9   the fake license uses both the driver's license number

10  and the date of birth on Mr. Lukoff's record.  So because

11  that driver's license number didn't come back to anybody

12  named Rod Lesperance, we know that that license is fake.

13          How do we know that the defendant is the one

14  who used that license?  Another piece of that jury

15  instruction that you'll get later today is the difference

16  between direct evidence and circumstantial evidence.

17  Direct evidence is something you see, or when a witness

18  comes and testifies about something they saw.

19  Circumstantial evidence is a proof in a chain of facts

20  and circumstances that tend to prove or disprove that a

21  fact occurred.  It's facts that lead to a legal inference

22  that something occurred.

23          For example, if your friend comes running in

24  the building and tells you it's raining outside, that's

25  direct evidence.  If your friend comes running inside, is

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1    soaking wet and carrying an umbrella, but doesn't say

2    that it was raining outside, you still know it's raining

3    outside because your friend is soaking wet and she's

4    carrying that umbrella.  So just like we know that it was

5    raining outside based on those facts, we know in this

6    case it's in all the evidence that we've seen that the

7    defendant is the one who used this driver's license.

8            Now, let's talk about that evidence.  First,

9    the defendant used his own photo for that driver's

10   license.  You heard from Special Agent Weisenstine that

11   when he first saw the defendant, he looked a little

12   different than he looks here today in court.  He had a

13   beard, he had shorter hair, and he didn't have glasses

14   on, but he still had those unique eyes that you can see

15   in that driver's license.

16           Now, in addition to that photo, him using his

17   own photo, how do we know that it's him?  Well, we're

18   here today because the fake driver's license was used for

19   Unit 2004 in 2023.  Who is the tenant of Unit 2004?

20   Cynthia Louis, the defendant's mother.  How do we know

21   that it was his mom?  Well, we saw the form she submitted

22   for her background check.  And on those forms, we see

23   that Cynthia Louis has a maiden name of Stuckey.

24           We also saw the defendant's birth certificate

25   that clearly tells us that the mother, Cynthia Stuckey,

1    and the child is Alfred Lenoris Davis.  So based on that

2    evidence, we know that the tenant of Unit 2004 was the

3    defendant's mother.

4         How else do we know that the defendant was tied

5    to Unit 2004 and that he was acting as Rod Lesperance and

6    used that fake ID?  Well, the defendant helped connect

7    the dots for us.  He wrote a check in his own name to 400

8    Sunny Isles.  Now, you'll see on the right side of the

9    screen there is a copy of all the defendant's signatures

10   from his DMV record.  And so that's how we know that the

11   person -- the Alfred Davis who submitted this check to

12   400 Sunny Isles is the same Alfred Davis that we have

13   here in court today.

14        What other evidence, what other facts together

15   show that the defendant is actually Rod Lesperance?

16   Well, in the condominium agreement, you see that the two

17   residents that were approved are Cynthia Louis and Rod

18   Lesperance and that Rod Lesperance is almost the same

19   exact age as the defendant.  It's about one year off.

20        We see that the only car that is listed in the

21   condominium agreement for Unit 2004 is a 2021 gray Land

22   Rover.  Who has a 2021 gray Land Rover?  One of the

23   records that you'll get tomorrow as part of that DMV

24   record is this record from motor vehicle inquiry report,

25   and it tells us the defendant, Alfred Lenoris Davis, has

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

| | |
|---|---|
| 1 | a 2021 gray Land Rover. |
| 2 | All of this evidence together works to prove |
| 3 | one conclusion:  The defendant is Rod Lesperance, except |
| 4 | his name is really Alfred Davis, and he's the same person |
| 5 | who used that driver's license to pass that background |
| 6 | check. |
| 7 | And we should talk briefly -- we heard some |
| 8 | testimony and cross-examination about who actually sent |
| 9 | that email to 400 Sunny Isles.  You'll see the elements |
| 10 | of the crime again.  It doesn't say that you submitted |
| 11 | the driver's license.  It says that you used it.  We |
| 12 | heard from the assistant manager of the condominium |
| 13 | association that they use those driver's licenses to make |
| 14 | sure that the person in front of them is the person |
| 15 | they're dealing with, the person that they might approve |
| 16 | to move into their luxury condominium, the person that |
| 17 | they are going to run the background check on. |
| 18 | And after he got that license and used that |
| 19 | name, and submitted it through the report, we know that |
| 20 | Rod Lesperance was the person that was actually added to |
| 21 | the lease. |
| 22 | Let's talk about the opposite.  If it wasn't |
| 23 | the defendant who is Rod Lesperance, that would mean that |
| 24 | a different man who looks just like the defendant, has |
| 25 | the same car as the defendant, is the same age as the |

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1   defendant, was the only other occupant of his mother's

2   lease.  That's not a logical conclusion from all the

3   evidence that we have seen.  The logical conclusion of

4   all this evidence that we just discussed is that the

5   defendant was Rod Lesperance.

6          Now, we know the license was fake.  We know

7   that the defendant was acting as Rod Lesperance.  How do

8   we know that the defendant knew the license was fake?

9   You're also allowed to use your common sense as you

10  review this evidence.  The defendant knew that this

11  license wasn't his because it had a different name, a

12  different date of birth, and a different driver's

13  license.  So all that evidence shows that the defendant

14  knowingly used a counterfeit access device.

15         Let's go to the second element.  The defendant

16  knew the access device was counterfeit and acted with an

17  intent to defraud or deceive.  I won't go over all the

18  evidence we just discussed again for the first half of

19  the element because we already know that the defendant

20  knew the access device was false.

21         How do we know that he acted with an intent to

22  defraud or deceive?  Your jury instructions will define

23  intent to defraud for you.  It means to act with an

24  intent to deceive or cheat.  Now, that instruction will

25  also say, usually, that's for personal financial gain or

1   to cause financial loss to someone, but it doesn't say

2   that that's a requirement of that element.  Intent to

3   deceive or cheat also happens when a person obtains

4   something by deceptive means, by lying, to get something

5   that they're not entitled to.

6          How do we know that the defendant in this case

7   acted with an intent to defraud or deceive?  He used a

8   name that wasn't his, a date of birth that wasn't his,

9   and a driver's license that wasn't his, so that he could

10  pass the background check that was required to become an

11  applicant of 400 Sunny Isles.  What did the defendant get

12  for his lie?  He got to live and be a resident and gain

13  access to all of the amenities that the beautiful luxury

14  condominium offers at 400 Sunny Isles, to the pool, the

15  tennis courts, the security, all things that the

16  defendant, Alfred Davis, wasn't entitled to in his own

17  name because he never got approved by the condominium

18  association to live there, because he never submitted his

19  own information and because his own information wasn't

20  used on that background check to approve a resident.

21          Now, we might be wondering why?  Why would the

22  defendant lie about who he is to become a resident at 400

23  Sunny Isles?  Now, to be clear, the reason the defendant

24  chose to lie isn't an element of the crime, but we have

25  seen evidence that helps explain why the defendant might

1    have done this.

2           Now, we heard that the name Rod Lesperance was

3    used by the defendant before when he lived in Unit

4    2000- -- excuse me, in Unit 903, back in 2018.  We know

5    that because we heard Mr. Jean-Pierre tell us that the

6    same Rod Lesperance that lived in Unit 2004 lived in Unit

7    903.  And we know that in 2018, Rod Lesperance also had

8    to apply for a background check.  We know that he also

9    had to submit a license with another photo that looks

10   just like the defendant and that that license was used

11   for a background check, and when he used that license for

12   a background check, that comprehensive criminal search

13   came back clear.

14          So the defendant intended to deceive, and he

15   did this because he had already given them the name Rod

16   Lesperance.  He couldn't now come back and use a

17   different name.  That would raise a red flag.  And he

18   also used the name Rod Lesperance because he already knew

19   it would give him a clear background check, and that he'd

20   get approved for Unit 2004, just like he got approved for

21   Unit 903.  The defendant even went so far in the license

22   he submitted for Unit 2004 that he included that 903

23   address on that license that he used because he had to

24   keep that lie going so he could get approved again.

25          We also heard that the defendant had other

1   reasons for lying about who he was.  The key piece of

2   becoming an applicant -- or, excuse me, a resident at 400

3   Sunny Isles is passing a background check.  We heard

4   through this trial that the defendant would have had some

5   results come back up in that background check.  We heard

6   from Special Agent Weisenstine that he ran a criminal

7   background check on the defendant, Alfred Davis, using

8   the defendant's information.  And what did he find?  He

9   found the defendant had a criminal record, that he had a

10  felony -- prior felony conviction, and so what does that

11  evidence tell us?

12       It tells us that the defendant acted as Rod

13  Lesperance so he could pass a background check that he

14  couldn't pass on his own.  So we know the defendant knew

15  that the counterfeit access device was fake, and we know

16  he acted with the intent to defraud or deceive because he

17  wanted to trick 400 Sunny Isles into thinking he was

18  somebody completely different, somebody who didn't have a

19  background check, so they would allow him to live at 400

20  Sunny Isles.  So we know that element has also been met

21  and proven beyond a reasonable doubt.

22       The third and final element.  The defendant's

23  conduct affected interstate or foreign commerce.  You'll

24  see in your instructions that that means any transaction

25  that involves communication between a place in one state

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1    and a place in another state.  What evidence have you

2    seen of that here?

3         Well, we heard from Mr. Jason Brown, the owner

4    of Brown's Background Checks.  He told us that he has

5    been working with 400 Sunny Isles for years.  They have a

6    system.  400 Sunny Isles takes somebody's name, asks for

7    a driver's license to verify that name, and that that

8    name is pivotal to what gets entered into the system, to

9    run a background check, that Brown's Background Check

10   then does for them.

11        We also learned how that background check is

12   ran.  From Florida where they enter the name on that

13   license, it goes to a criminal database in California.

14   So boom, interstate commerce, communication between

15   Florida and California.  We also know that that

16   California database then communicates with all of the

17   counties across the nation.  Additional interstate

18   commerce.  And we know that that criminal database in

19   California and the databases all across the country were

20   used in this specific case for the background check ran

21   on April 13, 2023, in Miami, Florida, for Rod Lesperance.

22        Now, we can all see on Government's Exhibit 3

23   that there was a typo.  We know that the front desk

24   person takes the person's ID and has to type that

25   information in.  We have heard that typos sometimes

1    happen, and a typo happened here.  But that doesn't

2    matter for the defendant's crime because that information

3    is still typed in based on that driver's license, and that

4    background check was still run based on that driver's

5    license that was submitted by the defendant to live at

6    400 Sunny Isles.  So the defendant's conduct still

7    affected interstate commerce.  Him giving that license is

8    why this background check was ran.  By using a different

9    name, the nationwide criminal search showed that the

10   defendant didn't have a criminal record.  In its simplest

11   form, the defendant used a fake license with a fake name

12   to pass a background check to gain access to a luxury

13   condominium in Miami that he didn't have access to.

14            We heard from Mr. Jean-Pierre that not everyone

15   is allowed to go into 400 Sunny Isles.  They have to

16   apply, and they have to pass a background check, things

17   Alfred Davis didn't do.

18            Based on all the evidence we've heard through

19   this case, the United States respectfully requests at the

20   end of this trial you return the only verdict that is

21   consistent with the law, the facts, and your common

22   sense.  Find the defendant guilty of access device fraud.

23            Thank you.

24            THE COURT:  You have 14 minutes left.

25            You may proceed, Defense.

1          MS. BOZANIC:  Thank you, your Honor.

2          May I proceed, your Honor?

3          THE COURT:  You may proceed, still.

4          MS. BOZANIC:  Thank you for patiently waiting

5    to hear this case and for being with us for two days.

6    Your job is extremely important.  Without you, we

7    wouldn't have the juries and we wouldn't have the system

8    that we have to ensure that everybody gets a fair trial,

9    including my client, Alfred Davis, who stands before you

10   today, or sits before you today, and you get to decide

11   the merits of the case.

12          As I told you in the opening statement, this

13   case is about pieces of a puzzle.  The Government charged

14   one count in the indictment, an access device fraud that

15   happened in April of 2023.  But what did they do?  The

16   pieces of the puzzle in that 2023 case didn't match, so

17   they decided to throw in three more puzzles at you.  And

18   you have all these pieces of puzzle, and you're supposed

19   to make sure your decision because you're just being

20   thrown extra evidence.  That has nothing to do with to

21   2023 charges.

22          The Government has the burden to prove this

23   case beyond and to the exclusion of all reasonable doubt.

24   And when I talk about reasonable doubt, reasonable doubt

25   is not if I tell you, you know, the sky is not blue,

**STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT**

1    obviously that's not reasonable doubt because you know

2    the sky is blue.  But reasonable doubt is something else,

3    and you'll get an instruction on what reasonable doubt

4    is.  You get to use your common sense and you get to

5    decide whether proof beyond a reasonable doubt is proof

6    so convincing that you would be willing to rely and act

7    on it without hesitation in the most important of your

8    own affairs.  That is what the definition of reasonable

9    doubt is.

10           So let me talk about criminal cases.  The

11   Government has this very high burden of proof because

12   it's a criminal case.  It's one of the highest burdens

13   that you can have.  And until they meet their burden of

14   proof, the defense does not have to do anything.  I don't

15   have to even talk to you.  I don't have to cross-examine

16   the agent.  I don't have to put any evidence if I believe

17   that they did not meet their burden.  And you are not to

18   consider that.  You are to consider whether the

19   Government has met their burden without requiring the

20   defense to do anything.  If the Government meets their

21   burden, then the defense can disprove that and show you

22   something else.  You need to decide whether they have met

23   their burden.  And I will show you why they have not.

24           First of all, there was no proper investigation

25   in this case.  You heard from three witnesses.  Nobody

1   could tell you who submitted this ID.  And I know the

2   Government wants to say, well, it's not about who

3   submitted it, it's who used it.  It's like tomato-tomato.

4   I mean, it's the same thing.  Whoever submitted it is the

5   one who used it.

6           When we started this case, I told you

7   that there would -- just to hear me out, to listen to the

8   evidence, and I will talk to you about why you will find

9   my client not guilty.  Now, there are three different

10  elements in this charge, and what the Judge will instruct

11  you is that you have to decide whether Mr. Davis

12  knowingly used the counterfeit access device with intent

13  to defraud -- that's the second element -- and whether it

14  affected interstate commerce.

15          Now, let's talk about the lack of evidence

16  first, and I'll go through the elements.  I want to talk

17  about the 2023, the date that's charged in the

18  indictment, the first puzzle.  They presented you with a

19  copy, and an ID in the name of Rod Lesperance.

20          MR. DOMINGUEZ:  Judge, she wants to use the

21  ELMO.

22          THE COURT:  That's fine.  It's all right with

23  me.  It's not being used by anybody else.

24          MS. BOZANIC:  If you look at this piece of

25  evidence, the license that was supposedly used on April

1    13, 2023, if you look here in the corner, 4/13/23 at

2    1:40 p.m.  If you keep looking it says male, Yadalyn

3    Monteste, Outlook, right there in the left corner.

4          You heard from Jeff Jean-Pierre that Yadalyn

5    Monteste was the person that worked who worked at the

6    front desk in 2023 and that this ID -- he couldn't tell

7    you where it came from because it was emailed probably to

8    her and he was trying to speculate as to where it came

9    but at the end said, I don't know where it came from

10   because it was emailed and, obviously, I wasn't there.

11         When I asked him whether the Government even

12   attempted to ask him where Yadalyn Monteste was so that

13   she could come and testify and tell us where this came

14   from, he said they never even asked him.  The Government

15   never called Yadalyn Monteste.  She is the one who can

16   tell you who sent this email.

17         Do you know what else can tell you who sent

18   this email?  The actual email itself.  If you pull the

19   email from this Outlook, which is a business record --

20   and they have copies of this -- it will tell you it came

21   from person X to Yadalyn Monteste.  They didn't do that,

22   they didn't bother to do that.

23         What else could they have done?  They pulled --

24   did they do a subpoena?  This is the Federal Government.

25   Did they subpoena this email in the name of Yadalyn

1    Monteste?  No, because they just want to throw these

2    pieces of puzzle at you and say, you know what, it's good

3    enough.  We have no idea where these came from.  They

4    cannot prove who submitted this, and they cannot prove

5    who used it.

6              Now, Mr. Jean-Pierre told you he didn't see

7    who -- he can't testify who provided the ID in 2023.  Did

8    you also notice that there was no authorization to pull

9    the credit report of Rod Lesperance in 2023?  There is

10   one of Cynthia Louis, but there's absolutely no

11   authorization signed by anybody who claims to be Rod

12   Lesperance.  And what they did is they put a different

13   name -- it was an accident or some kind of an error, and

14   they put the name of Rob Lesperance with no Social

15   Security number.

16             So they do have the evidence that Cynthia Louis

17   applied, and she actually signs this document applying

18   and authorizing for them to pull the credit reports, but

19   they don't have one for Rod Lesperance.  They pulled

20   somebody else's credit report.  It has no value.  And

21   they want to say that that mistake caused interstate

22   commerce to be affected.

23             Now, they bring in all of these side puzzles

24   because they're trying to deflect from the fact that they

25   have no evidence as to who submitted or used this ID in

1    2023, and they decide to say, You know what, let's talk

2    about 2018.  Let's present the jury with this old 2018,

3    you know, and even though it's five or six years and we

4    can't do anything about it because it's been more than

5    five years, we can't even charge him with this, let's

6    just bring it to the jury and try to deflect from the

7    whole fact that we can't prove our case.

8            So what did they do?  They throw the puzzle

9    No. 2 at you, and Jeff Jean-Pierre talks about that.  He

10   tells you, well, usually, it's the applicants who submits

11   it, but then he admits, I don't remember who submitted it

12   because it was over five years ago.  I have no idea who

13   submitted it.  He thinks he is the one who received it,

14   but he doesn't remember who got it.

15           The lease is under Booker Warren.  That's in

16   the evidence.  Nobody talked about Booker Warren, nobody

17   brought Booker Warren.  Jeff Jean-Pierre tells you that

18   spoke to Rod Lesperance and he said, Yeah, I saw him here

19   and there.  But did you notice that nobody asked him --

20   the Government who has the burden of proof never asked

21   Jeff Jean-Pierre to say, Can you please point out Rod

22   Lesperance in this courtroom?  Can you point to him?  Do

23   you see him?  Of all these people here in the courtroom,

24   do you see Rod Lesperance?

25           He never identifies who he believes to be Rod

1    Lesperance.  So he's talking about some person Rod

2    Lesperance but he never says, Hey, this is Rod

3    Lesperance, this is the guy.  He never comes on the stand

4    and says that.  You have no identification at all.

5         So, again, no one can testify about the 2018

6    case that you shouldn't really be considering, but it's

7    thrown in there as a second puzzle to cloud your

8    judgment.  And what did they do then?

9         And, by the way, that 2018 -- You'll get an

10   instruction on similar acts evidence, and it tells you

11   that if you find Mr. Davis committed that 2018 act, if

12   you find that he committed it, if there is enough

13   evidence to make you believe that this man committed that

14   act, only then you can only use it to help you decide the

15   similarity between the acts, but you cannot use it for

16   any other purpose and you cannot convict him of the 2023

17   incident, just because you believe he committed 2018.

18        So they have these two puzzles and they say,

19   you know what, what else can we throw at him?  Let's make

20   him look really bad in front of the jury, and let's just

21   kind say he's a convicted felon and bring in these

22   judgments and talk about that, you know what, he got

23   convicted in 2004, and I think he said 2010, and because

24   he was a convicted felon, that's why he applied.  This is

25   their theory, that that's why he applied for this lease.

1   Not because, you know, he had an eviction or maybe he had

2   a bad credit report.  It's because he's a convicted

3   felon.  What else could poison the jury's mind more,

4   somebody being evicted or somebody being a convicted

5   felon?

6          And what they do is they bring you these two

7   judgments.  And the judgments -- so they talk about the

8   one from 2004 says Alfred L. Davis.  It doesn't have a

9   date of birth.  Doesn't have a Social Security number,

10  and it basically -- you know, it's Alfred Davis.  They

11  talk about the fact that the agent went and picked up

12  these judgments.  How did they prove that this is the

13  person, the same person as on the judgment?  The 2010

14  judgment is from state court, and it just has the name of

15  Alfred Davis.  There are fingerprints.  I will show you

16  that.

17         In Government's Exhibit 15, there are

18  fingerprints of an Alfred Davis.  Do you know what the

19  FBI can do to prove that this is the same person?  They

20  have an FBI lab that can run fingerprints with the

21  database they have.  Did you hear testimony from anybody

22  saying that Alfred Davis whose fingerprints are on this

23  record is the same Alfred Davis as the one being tried in

24  this case?

25         So here come Puzzle 3 and 4.  Let's talk about

1    the fact -- Let's cloud the jury's mind even more to

2    deflect for the fact that we can't prove our case.  Let's

3    talk about the fact that he's a convicted felon.  Let's

4    talk about the fact that somebody who's a convicted felon

5    can't start over, is not a good person, and cannot live

6    at a condominium, and that must be the reason why they

7    applied.

8              This is their theory.  The theory has flaws.

9    They are the Government.  They are supposed to prove this

10   case beyond a reasonable doubt to you.  All they have

11   done is thrown their theories, their pieces of a puzzle.

12   They are just thrown at you and nothing makes sense.

13   It's kind of like throwing things at a wall to see what

14   sticks, but nothing is sticking and just have all these

15   little pieces.  Pieces are not enough.

16             For the Government to prove a case beyond a

17   reasonable doubt, they have to prove each and every

18   element of the indictment, and the indictment charges

19   that on April 13, 2023, Alfred Davis used, knowingly used

20   an unauthorized access device with intent to defraud and

21   it affected interstate commerce.

22             Now, I'm going to go back to what

23   Mr. Jean-Pierre told you.  He also told you that he is

24   not the owner of this building.  He's just a property

25   manager.  He told you Marco Chique, the Brazilian

1  businessman who bought this place in February of 2023,

2  rented it out right away in April, he's the one receiving

3  rent.  And Mr. Jean-Pierre cannot testify as to anything

4  about the rent.  He doesn't collect it.  He doesn't own

5  the building.  He doesn't own the pools.  The pool, the

6  tennis courts -- you know, the Government wants to argue,

7  well, even though there's no financial loss, there's

8  intent to defraud because the person would have used the

9  tennis courts, the security, the pool.  Who owns the pool

10 in a building of, let's say, 500 residents?  Who owns the

11 tennis courts in a building of 500 residents?  Is it

12 those tenants who paid $500,000 or more for an apartment?

13 Do they all own a piece of that pool, a piece of that

14 tennis court, or is it a property management building?

15       The property managers only manage the building.

16 They don't own the building.  The board of directors are

17 just the board of directors.  They don't own the

18 building.  The residents, such as Marco Chique, is the

19 one who would have been the appropriate victim of a

20 crime.  But he wasn't brought here.  You never heard from

21 Marco Chique.  The Government didn't call him because

22 Marco Chique got his $30,000 rent from Cynthia Louis

23 every month.

24       And there's no intent to defraud.  The

25 Government even told you at the beginning, We are not

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1    saying that this rent wasn't paid.  They admitted that in

2    opening, even though whatever they say is not evidence,

3    but Jeff Jean-Pierre told you there was no eviction.  I

4    didn't know of anything.  The rent was being paid.

5            So what is the intent to defraud?  The intent

6    to defraud -- I will read you the definition and you'll

7    get it in the jury instructions when you go back:

8            To act with the intent to defraud means to act

9    with intent to deceive or cheat, usually for personal

10   financial gain, or to cause financial loss to somebody.

11           And now the Government wants to say, well, it

12   says usually for personal financial gain.  Well, let's

13   look at the jury instruction.  This whole jury

14   instruction that talks about what elements they have to

15   prove, the defendant knowingly used a counterfeit access

16   device, that he knew the access device was counterfeit

17   and acted with intent to defraud or deceive, and that it

18   affected interstate commerce.

19           When you read this, just read the whole

20   instruction.  It tells you, An access device is a credit

21   card plate, code, account number, electronic serial

22   number, mobile identification number, personal

23   identification number, or other means of account access

24   that can be used alone or in conjunction with another

25   access device to get money, goods, services or any other

1    thing of value or that can be used to initiate a transfer

2    of funds.

3              They're arguing that this driver's license is

4    an access device, and it may be, in some cases, where

5    somebody is committing credit card fraud or trying to get

6    some type of money and transfer money, but they're so

7    stuck on bringing Mr. Davis into federal court, for

8    whatever reason, they want to have this federal charge

9    and they're going to do anything to bring him to federal

10   court.

11             So now they're going to say, you know, we're

12   going to call this driver's license an access device,

13   even though the whole instruction talks about getting

14   money.  There was no money that was obtained here

15   illegally.  Absolutely none.

16             Then it talks about what's a counterfeit access

17   device, and it talks about to use includes any effort to

18   obtain money -- to use includes any effort to obtain

19   money, goods, services, or any other thing of value, or

20   to initiate a transfer of funds with a counterfeit access

21   device.  How do you transfer money or funds?  How do you

22   initiate a transfer of funds with this driver's license?

23   Yes, you can go to a bank and transfer money, but that's

24   not the case we're here for.  We're here for possession

25   of a fraudulent driver's license.

1    This is not what the federal statute -- the

2    1029(a)(1), that's what they charged him with.  This is

3    not what this is for.  The whole instruction talks about

4    money, and it tells you, again, what I read, to act with

5    intent to defraud means to act with intent to deceive or

6    cheat, usually for personal financial gain or to cause

7    financial loss to someone.

8         So they want to say, well, it says usually.

9    They want to focus on the word usually, but read the rest

10   of the instruction.  Everything is about money.  They

11   have to prove that somebody did this so they could get

12   some money out of somebody, and that's not the case.

13        What makes this crime a federal crime is in the

14   1029 -- 18 U.S.C. 1029(a)(1), is all those three

15   elements.  Without having all those three elements, we're

16   not going to be here for two days in federal court.  But

17   the Government wants Mr. Davis in federal court.  That's

18   their goal.  They want him in federal court.  There's

19   absolutely no place for this charge being here.  There is

20   no intent to defraud.  No one tried to get money.  If

21   somebody even used a fake driver's license, that is a

22   state charge of having a fake driver's license.  That is

23   not a federal charge that should be before 14 people in

24   federal court.

25        Now, they can't prove any of the elements.

1   They bring it here.  And they want to basically talk

2   about the fact that, you know, he used some amenities at

3   a building.  There's no financial loss to the building.

4   If somebody was to rent an apartment for $13,000, that

5   owner who rents it is giving access to the building.

6   That's not what this charge is for.

7          The interstate commerce element, the third

8   element, they have to prove that, beyond a reasonable

9   doubt, that the use of this counterfeit access device,

10   that they call a driver's license, affected interstate

11   commerce on April 13th when they ran a background check

12   for Rob Lesperance, not Rod Lesperance, with a different

13   Social Security number -- actually, with no Social

14   Security number because there was no application.

15          So how did this affect interstate commerce.  If

16   this didn't affect interstate commerce, again, we have no

17   elements of the crime.  This is not a federal charge, 14

18   people in this room are not going to be here.  This judge

19   is not going to preside over this case.  This is going to

20   be over in the Gerstein building in state court, but no,

21   they want to have Mr. Davis in federal court.  That's the

22   goal.  So let's make sure we can charge him with

23   something because there's no other statute in federal

24   court that can charge somebody with possession of a

25   fraudulent ID.

1        And let's talk about all these different

2   puzzles and all these different things, because we can't

3   prove the 2023, we can't prove it beyond a reasonable

4   doubt.  Let's throw in all this other stuff and make him

5   out to be a bad guy, and make him out to be possibly the

6   one who did it in 2018, because we can't charge him with

7   that.

8        So the Government is destroying whatever they

9   want to stick, just trying to see what sticks to the

10  wall.  This is not proof beyond a reasonable doubt.  They

11  have to be able to prove this case beyond a reasonable

12  doubt.  They have to be able to prove the case, every

13  single element of this case, beyond a reasonable doubt.

14        You have to hold the Government to their

15  burden.  It is their burden, and until they meet their

16  burden, there's absolutely nothing the defense needs to

17  do to disprove this, absolutely nothing.  And, as I said,

18  in the jury instruction, you can't hold that against the

19  defense.  You're not supposed to, and I hope that you

20  don't because until they meet their burden and until they

21  actually present the case that somebody committed a crime

22  on April 13, 2023, and they prove to you who submitted

23  the ID, meaning who used it, and they prove that the

24  intent to defraud was there, meaning how did somebody get

25  some money out of this?  No one got defrauded.

1              We have a very, very flimsy case.  We have

2    these convictions they are trying to show you that they

3    didn't even bother to run the fingerprints or show any

4    evidence that this is the same person.  Alfred Davis?

5    How many Alfred Davises are there in Broward or Miami

6    County?  One is from Miami; one is from Broward.  How

7    many Alfred Davises are there?

8              So they want you to say, okay, this guy is bad

9    because he was convicted before, let's convict him.

10   That's not how the law works.  You don't just convict

11   somebody based on his past.  You have to -- and the jury

12   instructions will tell you, you have to focus on what's

13   in front of you.  He is charged with the 2023 access

14   device fraud.  I submit to you that this driver's license

15   is not an access device, that there was no money being

16   taken, it was not used for that purpose.  This charge

17   should not be here, and the Government has not met their

18   burden of proof.

19             The facts just don't add up.  When you put all

20   the four puzzles together, it makes it very, like, okay,

21   there's a lot there, but when you dissect it -- and I ask

22   you as members of the jury to do your job, and I know you

23   will do that when you go back.  I ask you to dissect all

24   the pieces of the puzzle, but don't focus on Puzzles 2, 3

25   and 4 because that is not what you're supposed to do.

1    You're supposed to focus on whether they proved the 2023.

2    Who submitted this ID?  Who testified?  The agent didn't

3    see him.  He couldn't testify to anything.  The guy who

4    runs background checks, he just told you how that works.

5    He didn't see anything.  Their star witness, Jeff

6    Jean-Pierre, told you he has no idea who got that e-mail

7    and how it was submitted.

8           It is their obligation to call people who can

9    tell you how this happened.  They didn't call Yadalyn

10   Monteste.  They didn't call Marco Chique to say if he was

11   out money.  They didn't do any of that.  We can't just

12   say this is good enough.  This has to be proof beyond a

13   reasonable doubt.

14          When I first introduced myself to you at the

15   beginning of this case, I told you it was my honor to

16   represent Alfred Davis, and I will tell you that again.

17   I'm not going to let him down.  I'm not going to let him

18   to go down for something he didn't do.  I ask you to look

19   at the lack of evidence, the lack of testimony, and bring

20   this case to justice and find Mr. Davis not guilty.

21          Thank you.

22          THE COURT:  Thank you, ma'am.

23          MS. BOZANIC:  Thank you.

24          Judge, can we go sidebar for a moment?

25          THE COURT:  No.

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1              All right.  You have 14 minutes left.

2              MR. BAILYN:  Ladies and Gentlemen of the Jury,

3     as I said in the beginning, it is the Government's burden

4     to prove this case to you.  We have discharged that

5     burden.  We have done it meticulously.  We have done it

6     thoroughly.  We have presented you with all of the

7     evidence you need to find this defendant guilty beyond a

8     reasonable doubt.

9              Now, as I said, it is our burden, but when the

10    defense makes an argument that someone didn't testify or

11    someone should have been called, then we and you of the

12    jury are entitled to ask, well, they have subpoena power,

13    too.  Why didn't they call them?

14             MR. DOMINGUEZ:  Objection, your Honor.

15             THE COURT:  Sustained.  They don't have any

16    responsibility to present anything.

17             You may proceed.

18             MR. BAILYN:  The defense has argued that we've

19    thrown a bunch of puzzle pieces at you, as if these

20    puzzle pieces don't fit together into one clear picture.

21    And the picture is that there is only one person who

22    would have used this access device, only one person in

23    the entire world, and that is Alfred Davis sitting there

24    right now.

25             Yes, he shaved his beard and he grew out his

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1  hair, but he is unmistakably the person in that fake ID,

2  a fake ID that was used to gain access to an apartment

3  that his mother was the tenant, where his car is

4  registered, where his personal bank account and a check

5  signed by him was used to pay some of the rent.  Who else

6  in the world, in the eight billion people in the world,

7  would have used a fake ID with his picture and done all

8  of those things?

9        Now, the defense has asked you to look at the

10  jury instructions, and they have clipped a couple

11  sentences that they think kind of supports their

12  position, but it doesn't.  An access device is a means of

13  identification that can be used to initiate a transfer.

14  As the defense counsel explained, the driver's license

15  can be used to initiate transfers, just like when you go

16  to a bank.  The intent to defraud does not -- does not --

17  require that there be a financial loss to somebody.  But

18  think of the evidence.  There's no evidence of rent paid.

19  The defense wants to argue it.

20        MR. DOMINGUEZ:  Objection, your Honor.

21        THE COURT:  What is the objection?

22        MR. DOMINGUEZ:  He's shifting the burden.

23        THE COURT:  No, I don't believe that is

24  shifting the burden.  Overruled.

25        MR. BAILYN:  Argument by counsel is not

1   evidence, and there's no evidence of rent here at all.

2   There is no requirement that there be a financial loss.

3   What is required is that this defendant use an access

4   device to obtain something to which he is not entitled,

5   and you can look at those jury instructions and the

6   definition of access device.  It is something, a thing of

7   value.

8          A luxury apartment, access to a luxury building

9   is a thing of value.  If it were not a thing of value,

10  then why would anybody pay for it?  This defendant

11  obtained a thing of value.

12         Interstate commerce, I won't show you the jury

13  instruction, but you'll see.  It's an event that causes a

14  communication between one state and another state.  We

15  have evidence here that the use of this fraudulent

16  driver's license caused communication between the state

17  of Florida and databases in California, and then servers

18  throughout the country.  Jason Brown testified to that.

19  He's been doing this for 20 years.

20         All of the elements have been met, but let me

21  address just a few of the other things that the defense

22  has sought to bring up.

23         They want you to believe that the convictions

24  that we presented to you are not Alfred Davis, but you

25  heard from Special Agent Weisenstine how he collected

1    these convictions.  He uses Alfred Davis's date of birth,

2    his Social Security number, his full name.  He used

3    Alfred Davis's personal identification, so that he could

4    look through FBI databases and identify these

5    convictions.

6            He then went to the court and pulled copies of

7    those same convictions.  And even if it were not Alfred

8    Davis who was convicted, there is still a reason for this

9    Alfred Davis to not want a criminal background check run,

10   because Alfred Davis, whoever he is, and we believe it's

11   him, has a criminal history.

12           MR. DOMINGUEZ:  Objection, your Honor.

13           THE COURT:  What is the objection?

14           MR. DOMINGUEZ:  He's making up evidence.

15           THE COURT:  No, I'll overrule that objection.

16           MR. BAILYN:  A criminal history he sought to

17   hide, not once, but twice, from 400 Sunny Isles.

18           Mr. Jean-Pierre testified that being a felon

19   does not prevent you from living at 400 Sunny Isles.

20   There are many felons or there are many people that have

21   had run-ins with the criminal justice system that have

22   rehabilitated themselves, but it is something that the

23   condominium association considers, wants to know, would

24   ask further questions.  And the defendant's felonies that

25   you have before you are the types of felonies that would

1    engender further questions; felony grand theft, bank

2    fraud, conspiracy to commit bank fraud.  These are

3    convictions, a criminal history, that the condominium

4    association should have known about so that it could have

5    asked further questions, that it could have made a

6    decision as to whether it wanted Alfred Davis living at

7    400 Sunny Isles.  But, no, this defendant felt he was

8    entitled, entitled to something that he was not entitled

9    to.  And so he lied, not once.  He lied twice.

10           The defendant brought up his authorization form

11   about a credit check, whatever it was.  But if you'll

12   remember Jason Brown's testimony, you don't need to sign

13   an authorization form when you do a criminal background

14   check.  It's only for credit checks.  In 2023, there was

15   one background check done.  The defense says, Well, maybe

16   it was because he had evictions.  They didn't check for

17   evictions.  Maybe it was because he had bad credit.  They

18   didn't check for credit.  They checked for one thing in

19   2023, criminal history.

20           And because this defendant lied about who he

21   was, the first thing I told you when I stood up before

22   you, he lied about who he was.  He got something he was

23   not entitled to.  In fact, he got something that is the

24   most valuable thing that a person can get, a place to

25   call home, security, a place to park his car.  In fact,

1    most people spend more on where they live than any other

2    part of their budget.  It is that important.

3              I'm not a state prosecutor.  I'm a federal

4    prosecutor.  This case belongs in federal court.  This

5    defendant used an access device, a counterfeit driver's

6    license, twice.  They're good.  They look good, but think

7    of who he defrauded.  Mr. Jean-Pierre, he started as a

8    front desk worker at 400 Sunny Isles.  He's an assistant

9    property manager at a condominium association.  He's not

10   the keeper of the national archives; these front desk

11   workers, printing out copies of driver's licenses,

12   printing out authorization forms, printing out lease

13   agreements, just work-a-day people.  And the defendant

14   defrauded them because the defendant thought he could get

15   away with it.

16             Would this defendant have used that counterfeit

17   driver's license at Special Agent Weisenstine's office?

18   Absolutely not.  Would he use it at my office?

19   Absolutely not.

20             MR. DOMINGUEZ:  Objection, Judge.

21             THE COURT:  What is the objection?

22             MR. DOMINGUEZ:  This is not rebuttal.  He's

23   talking about other uses and other crimes.

24             THE COURT:  I'll permit it.  There's certain

25   latitude permitted on closing arguments, but jury has

1    been instructed that what the lawyers say is not

2    evidence.

3           You may proceed, sir.

4           MR. BAILYN:  He used it at a place he knew he

5    could get away with it, a condominium association.

6    That's not how this world works.  There are laws, and

7    there are rules.  What the defendant did is a violation

8    of those laws, a violation of those rules, and a

9    violation of federal law.  That's why we've been together

10   for two days.  That's why we're in this courthouse.

11   That's why there is a federal judge.  This is a federal

12   case.

13          Find him guilty.

14          THE COURT:  Thank you, sir.

15          Ladies and Gentlemen of the Jury, it's now my

16   duty to instruct you on the rules of law that you must

17   use in deciding this case.  After I have completed these

18   instructions.  You'll go to the jury room and begin your

19   discussions, what we call your deliberations.

20          You must decide whether the Government has

21   proved the specific facts necessary to find the defendant

22   guilty beyond a reasonable doubt.  Your decision must be

23   based only on the evidence presented during the trial.

24   You must not be influenced in any way by either sympathy

25   for or prejudice against the defendant, or the

1    Government.

2              You must follow the law as I explained it, even

3    if you do not agree with the law.  And you must follow

4    all of my instructions as a whole.  You must not single

5    out or disregard any of the Court's instructions on the

6    law.

7              The indictment or formal charge against the

8    defendant is not evidence of guilt.  The law presumes

9    every defendant is innocent.  The defendant does not have

10   to prove his innocence or produce any evidence at all.

11   The defendant does not have to testify, and if the

12   defendant chooses not to testify, you cannot consider

13   that in any way while making your decision.

14             The Government must prove guilt beyond a

15   reasonable doubt.  If it fails to do so, you must find

16   the defendant not guilty.

17             The Government's burden of proof is heavy.  But

18   it doesn't have to prove a defendant's guilt beyond all

19   possible doubt.  The Government's proof only has to

20   exclude any reasonable doubt concerning the defendant's

21   guilt.

22             A reasonable doubt is a real doubt based on

23   your reason and common sense after you have carefully and

24   impartially considered all the evidence in the case.

25   Proof beyond a reasonable doubt is proof so convincing

1    that you would be willing to rely and act upon it without

2    hesitation in the most important of your own affairs.  If

3    you are convinced that the defendant has been proved

4    guilty beyond a reasonable doubt, say so.  If you are not

5    convinced, say so.

6           As I said before, you must consider only the

7    evidence that I have admitted in the case.  Evidence

8    includes the testimony of witnesses and the exhibits

9    admitted, but anything the lawyers say is not evidence

10   and is not binding on you.

11          You should not assume from anything I have said

12   that I have any opinion about any factual issue in this

13   case.  Except for my instructions to you on the law, you

14   should disregard anything I may have said during the

15   trial in arriving at your own decision about the facts.

16   Your own recollection and interpretation of the evidence

17   is what matters.

18          In considering the evidence, you may use

19   reasoning and common sense to make deductions and reach

20   conclusions.  You should not be concerned about whether

21   the evidence is direct or circumstantial.  Direct

22   evidence is the testimony of a person who asserts that he

23   or she has actual knowledge of a fact, such as an

24   eyewitness.  Circumstantial evidence is proof of a chain

25   of facts and circumstances that tend to prove or disprove

1    a fact.  There is no legal difference in the weight you

2    may give to either direct or circumstantial evidence.

3         When I say you must consider all the evidence,

4    I don't mean that you must accept all of the evidence as

5    true or accurate.  You should decide whether you believe

6    what each witness had to say, and how important that

7    testimony was.  In making that decision, you may believe

8    or disbelieve any witness, in whole or in part.

9         The number of witnesses testifying concerning a

10   particular point does not necessarily matter.  To decide

11   whether you believe any witness, I suggest you ask

12   yourself a few questions:

13        Did the witness impress you as one who was

14   telling the truth?  Did the witness have any particular

15   reason not to tell the truth?  Did the witness have a

16   personal interest in the outcome of the case?  Did the

17   witness seem to have a good memory?  Did the witness have

18   the opportunity and ability to accurately observe the

19   things he or she testified about?  Did the witness appear

20   to understand the questions clearly and answer them

21   directly?  Did the witness's testimony differ from other

22   testimony or other evidence?

23        The indictment charges one separate crime

24   called a count against the defendant.  The count has a

25   number.  You'll be given a copy of the indictment to

1     refer to during your deliberations.

2             Count I charges that the defendant knowingly,

3     and with intent to defraud, used a counterfeit access

4     device, and said conduct affected interstate and foreign

5     commerce.  I caution you that the defendant is on trial

6     only for the specific crime charged in the indictment.

7     You're here to determine from the evidence in this case

8     whether the defendant is guilty or not guilty of that

9     specific crime.  You must never consider punishment in

10    any way to decide whether the defendant is guilty or not

11    guilty.  If you find the defendant guilty, the punishment

12    is for me alone to decide later.

13            You'll see that the indictment charges that a

14    crime was committed on or about a certain date.  The

15    Government doesn't have to prove that the offense

16    occurred on a particular date, or on an exact date.  The

17    Government only has to prove beyond a reasonable doubt

18    that the crime was committed on a date reasonably close

19    to the date alleged.

20            The word knowingly means that an act was done

21    voluntarily and intentionally and not because of a

22    mistake or by accident.

23            The Government must prove beyond a reasonable

24    doubt that the defendant was the person who committed the

25    crime.  After examining all the evidence, if you have a

1    reasonable doubt that the defendant was the person who

2    committed the crime, you must find the defendant not

3    guilty.

4         During the trial you heard evidence of acts

5    allegedly done by the defendant on other occasions that

6    may be similar to acts with which the defendant is

7    currently charged.  This evidence is admitted and may be

8    considered by you for the limited purpose of assisting

9    you in determining whether the defendant had the state of

10   mind or intent necessary to commit the crime charged in

11   the indictment, whether the defendant had a motive or the

12   opportunity to commit the acts charged in the indictment,

13   whether the defendant acted according to a plan or in

14   preparation to commit a -- to commit a crime.

15        That needs to be fixed.  That's a typo in

16   there, Jessica, wherever you are.  I am interlineating

17   the word crime for mistake, and I'm initialing it.

18        You may not consider this evidence for any

19   other purpose.

20        The defendant is on trial only for the crime

21   charged --

22        I'm going to just change this page.  It said

23   crimes, but it's only one crime --

24        (Continuing) -- charged in the indictment.  You

25   may not convict a person simply because you believe that

1   person may have committed an act in the past that is not

2   charged in the indictment.

3          So I hope you understand that any evidence of

4   any prior conduct is only shown for the purpose of either

5   the intent or the state of mind, whether a motive or

6   opportunity to commit the crime, or whether the defendant

7   acted according to a plan or in preparation to commit a

8   crime.  You may not convict a person simply because you

9   believe that person may have committed an act in the past

10  that is not charged in the indictment.

11         During the trial, you heard he evidence of acts

12  allegedly done by the defendant on other occasions that

13  may be similar to acts with which the defendant is

14  currently charged.  If you find the defendant committed

15  the allegedly similar acts, you may use that evidence to

16  help you decide whether the similarity between those acts

17  and the one charged in this case suggest that the same

18  person committed all of them.  You may not consider this

19  evidence for any other purpose.

20         The defendant is currently on trial only for

21  the crime charged in the indictment.  You may not convict

22  a person simply because you believe that person may have

23  committed an act in the past that is not charged in this

24  indictment.

25         It is a federal crime to use counterfeit credit

1   cards or any other access device.  The defendant can be

2   found guilty of this crime only if all the following

3   facts are proved beyond a reasonable doubt:

4           One, the defendant knowingly used a counterfeit

5   access device; two, the defendant knew the access device

6   was counterfeit and acted with the intent to defraud or

7   deceive; and three, the defendant's conduct affected

8   interstate or foreign commerce.

9           An access device is a credit card, plate, code,

10  account number, electronic serial number, mobile

11  identification number, personal identification number, or

12  other means of account access that can be used alone or

13  in conjunction with another access device to get money,

14  goods, services, or any other thing of value, or that can

15  be used to initiate a transfer of funds other than a

16  transfer originated solely by paper instrument.

17          A counterfeit access device is an access device

18  that's counterfeit, fictitious, altered or forged, or an

19  identifiable component of an access device or a

20  counterfeit access device.

21          To use includes any effort to obtain money,

22  goods, services, or any other thing of value, or to

23  initiate a transfer of funds with a counterfeit access

24  device.

25          To act with intent to defraud means to act with

1    intent to deceive or cheat, usually for personal
2    financial gain, or to cause financial loss to someone
3    else.
4           The heart of the crime is the knowing use of a
5    counterfeit access device with intent to defraud.  The
6    Government does not have to prove that anyone was
7    actually deceived or defrauded.
8           The term interstate commerce refers to any
9    transaction or event that involves travel, trade,
10   transportation, or communication between a place in one
11   state and a place in another state.  The Government does
12   not have to prove that the defendant specifically
13   intended to interfere with or affect interstate commerce,
14   but the Government must prove that the natural
15   consequence of the facts alleged in the indictment would
16   be to affect interstate commerce.
17          For example, if you find beyond a reasonable
18   doubt that the device was used to purchase goods from
19   another state, that the device was used to purchase goods
20   manufactured outside of the state, you may find that
21   interstate commerce has been affected.
22          You have just heard evidence of acts allegedly
23   done by the defendant that may be similar to those
24   charged -- you heard, not just.
25          You have heard evidence of acts allegedly done

1  by the defendant -- I'm deleting the word "just" because,

2  obviously, the only thing you have heard today is

3  arguments.

4        You have heard evidence of acts allegedly done

5  by the defendant that may be similar to those charged in

6  the indictment or were committed on other occasions.  If

7  you find the defendant committed the allegedly similar

8  acts, you may use this evidence to help you decide

9  whether the similarity between the acts and the one

10  charged in this case suggests the same person committed

11  the offense -- or committed all of them.  I'll read that

12  again.

13        You have heard evidence of acts allegedly done

14  by the defendant that may be similar to those charged in

15  the indictment but were committed on other occasions.  If

16  you find the defendant committed the allegedly similar

17  acts, you may use this evidence to help you decide

18  whether the similarity between those acts and the one

19  charged in this case suggests the same person committed

20  all of them.

21        The defendant is currently on trial only for

22  the crime charged in this indictment.  You may not

23  convict a person simply because you believe that person

24  may have committed an act in the past that is not charged

25  in this indictment.

1          You have heard evidence -- this is the -- it's

2    not the same but it's similar to the previous one.

3          You have heard evidence of acts allegedly done

4    by the defendant that may be similar to those charged in

5    the indictment but were committed on other occasions.

6    You must not consider this evidence to decide if the

7    defendant engaged in the activity alleged in the

8    indictment, but you may consider this evidence to decide

9    whether the defendant had the state of mind or intent

10   necessary to commit the crime charged in the indictment,

11   the defendant had a motive or the opportunity to commit

12   the acts charged in the indictment, the defendant acted

13   according to a plan or in preparation to commit a crime,

14   or the defendant committed the acts charged in the

15   indictment by accident or mistake.

16          Your verdict, whether guilty or not guilty,

17   must be unanimous, in other words, you must all agree.

18   Your deliberations are secret and you'll never have to

19   explain your verdict to anyone.  Each of you must decide

20   the case for yourself but only after fully considering

21   the evidence with the other jurors.  So you must discuss

22   the case with one another and try to reach an agreement.

23   While you're discussing the case, don't hesitate to

24   re-examine your own opinion and change your mind if you

25   become convinced that you were wrong, but don't give up

1   your honest beliefs just because others think differently

2   or because you simply want to get the case over with.

3            Remember, that in a very real way you are the

4   judges, judges of the facts.  Your only interest is to

5   seek the truth from the evidence in the case.

6            When you get to the jury room, choose one of

7   your members to act as foreperson.  The foreperson will

8   direct your deliberations and will speak for you in

9   court.

10           A verdict form has been prepared for your

11   convenience.  Simplest verdict form known to man, this

12   long (indicating).

13           It says, style of the case, United States

14   District Court for the Southern District of Florida, Case

15   No. 24-CR-20051-Martinez, *United States of America versus*

16   *Alfred Lenoris Davis, defendant.*

17           Verdict form:  We, the jury, unanimously find

18   the defendant, Alfred Lenoris Davis, as to Count I of the

19   indictment, and there is a place for not guilty and a

20   place for guilty.  You put an X next to whichever you

21   vote unanimously on.  Again a reminder that it's

22   unanimous.

23           So say we all, and then a line for the

24   signature by the foreperson.  And I want you to print

25   your name under that because I can't read the name

1    sometimes, and then date it today.  Today is the 15th, I

2    believe; isn't it?

3              MR. DOMINGUEZ:  The 15th, Judge.

4              THE COURT:  Today is the 15th of April -- May,

5    whatever it is.

6              MR. DOMINGUEZ:  May.

7              THE COURT:  You guys know better than I do.

8              Now, I'm going to give you a copy of the

9    indictment -- excuse me, of the instructions, so you can

10   take them back with you, but I do want to make those

11   changes.  So I'm going to do that first.

12             Perian Field and Shari Walsh, you are the

13   alternates, so you do not -- do you have anything in the

14   jury room?

15             ALTERNATE JUROR:  No.

16             THE COURT:  Ms. Fields, do you have anything in

17   the jury room?

18             ALTERNATE JUROR:  No.

19             THE COURT:  Then come on this way, and we'll --

20   I'll talk to you in my chambers and thank you for your

21   service.  And then the rest of you, if you will go into

22   the jury room, I will have the instructions as soon as

23   they are modified, and the verdict form brought into you

24   in a couple of minutes.

25             So go into the jury room.  You may start

1   selecting your foreperson, and then I'll send you the

2   instructions in just a moment, as soon as I can

3   physically get them typed.  All right?  Go on into the

4   jury room.

5            (Jury exits at 12:00 p.m.)

6            THE COURT:  You all can be seated.

7            Ladies and gentlemen, there is one thing that

8   I'm kind of a little bit annoyed.  I'm concerned and I

9   hope that the jury returns a verdict today -- well, they

10  should, but apparently there is a full-page advertisement

11  on the back page of the New Times of Blacks For Trump

12  that have your client as an innocent victim that is here

13  totally erroneously and through the machinations of the

14  federal system, including me.  I'm not real happy about

15  that.

16           MR. DOMINGUEZ:  Judge, we don't know anything

17  about it.

18           THE COURT:  I'm sure you don't.  If I thought

19  you did, you'd be going out that door instead of that

20  door.  But I got to tell you, it appears to me to be a

21  blatant attempt to interfere with the jury.  I -- frankly,

22  I don't think the New Times has such a great distribution

23  that it's going to be something that they picked up on

24  the way here, but there is more than one picture of your

25  client, the same picture that's used in this prosecution.

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1    And it is very, very unsettling to me.

2          I can assure you that I am nowhere near as

3    lenient as the judge in, wherever, New York.  If I find

4    that somebody is attempting to influence the jury with

5    something that's going on outside, somebody's going to be

6    punished for it.

7          MR. DOMINGUEZ:  Judge, if you want to ask the

8    jury if they have had access to it.

9          THE COURT:  No, I don't want to ask them

10   because I don't want to tell them about it.  I don't

11   think it's likely that -- I don't know.  How likely is it

12   that somebody is going to look at the back page of the

13   New Times?  No offense to the New Times, but I don't

14   think that that's likely.

15         MR. DOMINGUEZ:  I don't even know when it came,

16   if it came out today.

17         THE COURT:  I got it from our security people

18   today.  So I would assume that it came out today, but I

19   don't know that for a fact.

20         MR. DOMINGUEZ:  Well, they were instructed to

21   not look at news or --

22         THE COURT:  I did tell them that, but I'm not

23   sure that any of them would consider the New Times a

24   newspaper.  So I don't know.

25         MR. DOMINGUEZ:  No, I don't think so.

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1      THE COURT:  I'm just very annoyed.  We'll see.

2      MR. DOMINGUEZ:  Judge, I can assure you nobody

3  here knows about it.

4      THE COURT:  I don't believe that you did.  I

5  know both of you, and I don't think that you would do

6  that.

7      MR. DOMINGUEZ:  No, no.

8      THE COURT:  But I'm hoping that anybody that

9  might have had something to do with it, would -- never

10  mind.  We'll be in attendance.  Please wait here.

11      MS. BOZANIC:  May I address one exhibit, Judge?

12      THE COURT:  What's that?

13      MS. BOZANIC:  No, we resolved it.  Never mind.

14  We're good.

15      THE COURT:  You guys work it out it.  If you

16  can't, call me and I will come back.

17      MR. DOMINGUEZ:  It worked out.

18      THE COURT:  You guys wait here because I don't

19  think that we need to break for any particular time,

20  maybe in a half-hour, I'll come back and let you go

21  somewhere as long as you can be back within 10 or 15.

22      MR. DOMINGUEZ:  We'll be on the 7th floor.

23  We'll give our cell phone numbers as well, Judge.

24      THE COURT:  All right.

25      (Court recessed at 12:04 p.m.)

**STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT**

1          (Court resumed at 2:11 p.m.)

2          (Call to the Order of the Court.)

3          THE COURT:  Okay.  We've received a note from

4   the jury.

5          Have you distributed the note to the parties?

6          COURTROOM DEPUTY:  No.

7          THE COURT:  Okay.  You may be seated.

8          The note says that they've reached a verdict.

9          Is there any reason we should not receive the

10  verdict at this time?

11          MR. BAILYN:  Not from the Government.

12          MS. BOZANIC:  No, Judge -- well, you had

13  reserved on the Rule 29 motion.

14          THE COURT:  I'm still reserving.

15          MR. DOMINGUEZ:  Okay.  Then there's no reason.

16          THE COURT:  Please bring in the jury.

17          (Jury enters at 2:12 p.m.)

18          THE COURT:  All right.  You may all be seated.

19          Mr. Safran, it's my understanding that the jury

20  has reached a verdict; is that correct?

21          THE FOREPERSON:  Yes.

22          THE COURT:  All right.  Could you please give

23  it to the Court Security Officer?

24          Iris, please publish the jury verdict.

25          COURTROOM DEPUTY:  Case No. 24-CR-20051-

1  Martinez, *United States of America versus Alfred Lenoris*

2  *Davis*.

3       Verdict form.  We, the jury, unanimously find

4  the defendant, Alfred Lenoris Davis, as to Count I of the

5  indictment, guilty.  So say we all, signed by the

6  foreperson dated May 15, 2024.

7       THE COURT:  All right.  Ladies and gentlemen of

8  the jury, we thank you very much for your service.  I

9  will be in in just a moment to speak to you to thank you

10  personally and to give you certificates that are suitable

11  for framing, but not much else.

12       Your lunch is on the way up, so you'll be able

13  to take your lunch with you, which is good because I

14  haven't eaten yet.  So if you will go into the jury room

15  and wait for me, I will be there in just a moment.

16       (Jury exits at 2:15 p.m.)

17       THE COURT:  All right.  You may be seated

18  except for the defense.

19       Mr. Alfred Lenoris Davis, a jury of your peers,

20  having found you guilty of Count I of the indictment

21  pending against you, I hereby adjudicate you guilty.

22       What is the Government's position on bond at

23  this point?

24       MR. BAILYN:  Your Honor, we would ask that the

25  defendant be remanded.

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1          THE COURT:  I'm not sure.  I think there's

2    enough issue in this case that I think I'll let him out

3    until, at the very least, until sentencing.

4          So I will permit you to remain on bond under

5    the same terms and conditions that you have been up to

6    this time.  But, Mr. Davis, don't let me down because I'm

7    trusting you.  We will talk again.

8          Do we have a date for sentencing?

9          COURTROOM DEPUTY:  Yes, Judge.  The sentencing

10   date is Thursday, July 11th at 11:00 a.m.

11         THE COURT:  All right.  At this point, I'll

12   refer you to the U.S. Probation Office for the

13   preparation of a sentencing memorandum.  And cooperate

14   with them.  They'll tell you where to be.  Failure to

15   show up is a separate crime and a very serious one,

16   sometimes more serious than the underlying crime.  So you

17   must show up at the various times that you're told to.

18         Talk to the probation office people.  Help them

19   prepare your presentence investigation.  And we'll see

20   you back here on Thursday, July 11th --

21         At what time?

22         COURTROOM DEPUTY:  11:00 a.m.

23         THE COURT:  -- 11:00 a.m. here in this courtroom,

24   all right?

25         We will in recess on this matter.  I'll get you

STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT

1    your exhibits in a moment.

2              (Proceedings concluded at 2:17 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    **C E R T I F I C A T E**

3

4            I certify that the foregoing pages represent a

5    true and correct transcript of the above-styled

6    proceedings as reported on the date, time, and location

7    listed.

8

9            I further certify that I am neither counsel

10   for, related to, nor employed by any of the parties to

11   the action in which this hearing was reported, and

12   further that I am not financially nor otherwise

13   interested in the outcome of the above-entitled matter.

14

15
     <u>DATE: 6/24/24</u>    /s/Mary Ann Casale, RDR, FPR-C, CLR, CSR-IL
16                        Official Court Reporter
                          United States District Court
17                        Southern District of Florida
                          400 North Miami Avenue
18                        Miami, Florida 33128
                          MaryAnn_Casale@flsd.uscourts.gov
19

20

21

22

23

24

25

**STENOGRAPHICALLY REPORTED COMPUTER-AIDED TRANSCRIPT**